IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEDFORD INTERNET OFFICE SPACE, LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:12-cv-4322-N-BN |
| TRAVELERS CASUALTY INSURANCE COMPANY, | § § § | |
| Defendant. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. Plaintiff and Defendant filed cross-motions for summary judgment. *See* Dkt. Nos. 33 & 36. The undersigned issues the following findings of fact, conclusions of law, and recommendation that Plaintiff's motions should be denied, and Defendant's motion should be granted.

**Background**

This is an insurance coverage dispute. Defendant Travelers Casualty Insurance Company of America insured two commercial buildings owned by Plaintiff Bedford Internet Office Space, LLC. Defendant denied Plaintiff's theft claim under a policy provision that excluded coverage when the insured property has been vacant for more than 60 days before the loss or damage occurs.

Plaintiff sued Defendant alleging claims for breach of contract, insurance code violations, breach of the duty of good faith and fair dealing, and negligence, and it sought both actual and exemplary damages. *See* Dkt. No. 1-4. Defendant asserted as one if its affirmative defenses that Plaintiff's claims were excluded or limited by the terms of the insurance policy. *See* Dkt. No. 17 at 5.

Plaintiff filed a motion for partial summary judgment [Dkt. No. 33], and Defendant filed a motion for summary judgment [Dkt. No. 36]. Both motions seek determination as a matter of law as to whether the insured premises were vacant, as that term is defined in the policy, for more than 60 days before the loss occurred.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

On cross-motions for summary judgment, the Court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *See Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001); *Jonathan C. v. Hawkins*, No. CIV A 9:05-CV-43, 2006 WL 3498494, at *5 (E.D. Tex. Dec. 5. 2006). The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no

genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Factual Background

Plaintiff owns commercial office space located at 1900 and 1902 Central Drive, Bedford, Texas. *See* Dkt. No. 1-4 at 4. Plaintiff leased both buildings to Bill Fletcher TGI for use by Bill Fletcher's not-for-profit charitable ministry Goodness Outreach Depot on June 1, 2011. *See* Dkt. No. 35 at 15-16, 18; Dkt. No. 38-5 at 6. As part of the lease, Plaintiff was required to purchase insurance on the two buildings. *See* Dkt. No. 35 at 3, 21; Dkt. No. 38-6 at 3.

Defendant issued an insurance policy to Plaintiff on the two buildings. *See* Dkt. No. 35 at 32; Dkt. No. 38-9 at 5. The policy was a "Technology Office PAC" policy. Dkt. No. 38-9 at 5; Dkt. No. 38-10 at 1. The policy period was June 20, 2011 to June 20, 2012. *See* Dkt. No. 35 at 32; Dkt. No. 38-9 at 5.

The policy included the following coverage limitation:

> d.    We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss, if the building where loss or damage occurs has been "vacant" for more than 60 consecutive days before that loss or damage occurs:
>
> (1)    Vandalism
>
> ...

(5)     "Theft" or

(6)     Attempted "theft."

*See* Dkt. No. 35 at 36; Dkt. No. 38-12 at 2. The policy defined "vacant" as follows:

(2)     When this policy is issued to the owner or general lessee of a
        building, building means the entire building. Such building is
        vacant unless at least 31% of its total square footage is:

        (a)     Rented to a lessee or sub-lessee and used by the lessee or sub-
                lessee to conduct its customary operations; or

        (b)     Used by the building owner to conduct customary operations.

*See* Dkt. No. 35 at 37; Dkt. No. 38-18 at 1. The policy does not define "customary

operations," but it does define "operations" as "your business activities occurring at the

described premises ..." Dkt. No. 38-17 at 5.

Plaintiff's sole owner, Patrick O'Leary, and Fletcher agreed that over the first

90 to 120 days of the lease, Plaintiff would move out of the property, and Fletcher

would be moving in and "ramping up" his business operations. *See* Dkt. No. 35 at 3, 16.

Fletcher and his volunteers were in the buildings on numerous occasions in June and

July of 2011 preparing to open his business to the public. *See id.* at 16. Fletcher was

unable to continue the transition of his business to the insured property while O'Leary

was out of town for or otherwise involved in career training from July 31 until just

after Labor Day 2011. *See id.* at 3, 16.

On September 7, 2011, O'Leary and Fletcher went to the property and

discovered that there had been a break-in and theft at the buildings. *See id.* at 3-4.

Plaintiff reported the break-in and theft to the Bedford Police Department on

September 7, 2011. *See* Dkt. No. 39-12 at 5. Plaintiff reported to the Bedford Police Department that the loss or damage occurred sometime between June 22, 2011 and September 7, 2011. *See* Dkt. No. 39-12 at 5, 6.

Officer Regan reported that, during his walk-through of the buildings on September 7, 2011, he noticed open spaces in the roof where AC units had been, and O'Leary stated the spaces had been covered with wood. *See* Dkt. No. 39-13 at 1. Officer Regan also reported that he had been employed with the Bedford Police Department for 20 years, and he could not remember the last time the buildings were used, certainly not in the last 8 to 10 years. *See id.* at 2. O'Leary stated to Officer Regan that he and Fletcher were "just about to drop power" and get "spun up to get started on a non-profit business." *See* Dkt. No. 39-16 at 4.

The crime scene investigator reported that while she was processing the scene on September 7, 2011, O'Leary stated that he was planning on reopening the building, which had been vacant for more than ten years but that he had a difficult time due to the economic downturn and the State's claiming imminent domain due to freeway construction. *See* Dkt. No. 40-1 at 5.

Officer Gregory met with Fletcher at the scene on September 7, 2012. Fletcher told Officer Gregory that the last time he was at the property was on September 3, 2012 and that he was in the process of moving equipment into the building to start a nonprofit organization. *See* Dkt. No. 39-16 at 1.

On September 8, 2011, Plaintiff reported the theft and vandalism to Defendant.

O'Leary also visited Officer Regan at the police station on September 8, 2011, and Officer Regan reported that it was his understanding from his conversation with O'Leary and based on his personal observation of the property that no work had been conducted at the buildings in some time. *See* Dkt. No. 39-16 at 6. He also reported that O'Leary informed him that the water and power were not on in the buildings. *See id.*

As part of its investigation, Defendant obtained a recorded statement from O'Leary on October 18, 2011. *See* Dkt. No. 40-16 at 4, Dkt. No. 40-19 at 5. O'Leary stated that, since his sale of Matchmaker.com in 2000, he had not operated a business out of 1900 Central Drive, that he had been using the building for storage while he built it out as finances permitted, and that the last work done at the building was in 2007 or 2008. *See* Dkt. No. 40-17 at 1-2. O'Leary stated that the last time a business had operated out of 1902 Central Drive was around 2008. *See id.* at 3-6. O'Leary further stated that he had just entered into a lease with Fletcher effective June 1, 2011 and that Fletcher was in the process of phasing in the operation of his business and was in and out of the building. *See id.* at 6. O'Leary reported that the last time he had been to the property prior to discovering the theft on September 7, 2011 was in late July, 2011 and that the break-in was in late July or early August. *See* Dkt. No. 40-18 at 6.

Defendant's investigator also received a phone call from Bill Fletcher, who stated that he had leased the property but that his business never operated out of the location because the property was not ready for a business at all. *See* Dkt. No. 41-10

at 1.

O'Leary reported three subsequent theft claims at the property in November 2013 and another in January 23, 2012. *See* Dkt. No. 40-20 at 1-6, 41-3 at 1-5, 41-5 at 5, 41-6 at 4. As he walked through the property on November 16, 2011, Officer Simmons observed that "the entire business was a disaster due to the fact that it had been abandoned for quite some time." Dkt. No. 40-20 at 2. In a statement given to Defendant's investigator on March 20, 2012, O'Leary stated that there had been no electricity or water service in the buildings since 2008. *See* Dkt. No. 41-16 at 5.

Fletcher cancelled the lease in November 2011. *See* Dkt. No. 35 at 16.

On January 3, 2012, Defendant denied Plaintiff's claim under the policy's vacancy exclusion because it concluded, after an investigation, that both buildings had been vacant, as that term is defined in the policy, since 2000. *See* Dkt. No. 35 at 39-41.

Defendant's investigator obtained a second recorded statement from O'Leary on March 20, 2012. *See* Dkt. No. 41-16 at 2 - 41-18 at 2. O'Leary stated that his businesses were registered at the address of the property, that he received shipments and picked up mail at the property, and that he had been in and out of the buildings, attempting to go to the buildings a couple of times a week. *See* Dkt. No. 41-16 at 4. O'Leary also stated that he had no employees in the buildings since 2008 and that there was no water or electric service to the buildings since 2008. *See id.* at 5.

The Tarrant County Appraisal District categorized the property as vacant in 2011 and 2012. *See* Dkt. No. 38-4 at 4-5, 41-18 at 6.

## Objections to Summary Judgment Evidence

Plaintiff objects to Defendant's use of police reports, a recorded statement made during Defendant's investigation, and Tarrant County Appraisal District Records. *See* Dkt. No. 45 at 2-8.

Plaintiff raises multiple objections to Defendant's use of Bedford Police Department reports concerning thefts at the property. First, Plaintiff objects to the police reports on the basis that they have not been properly authenticated. This objection should be overruled. The police reports are admissible as business records under Federal Rule of Evidence 803(6), *see United States v. Halperin*, 441 F.2d 612, 618 (5th Cir. 1971), and are properly authenticated, *see, e.g.*, Dkt. No. 38-2 at 4-5.

Plaintiff also objects because it contends that it was denied the ability to challenge the documents. This, too, should be overruled. Plaintiff does not contend that it did not have the opportunity to conduct discovery concerning the police reports, nor did it request additional time to conduct discovery in order to respond to Defendant's motion for summary judgment.

Plaintiff objects to the police reports as inadmissible hearsay and objects to statements and summaries of statements attributed to Patrick O'Leary or William Fletcher in the police reports as hearsay within hearsay. Police reports are admissible, at least in part, under an exception to the hearsay rule as public records that set forth factual findings from a legally authorized investigation. *See* FED. R. EVID. 803(8)(A)(iii). Such reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness. *See Reliastar*

*Life Ins. Co. v. Thompson*, Civil No. M-07-140, 2008 WL 4327259, at *4 (S.D. Tex. Sept. 16, 2008) (citing *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)). The trustworthiness of a report admitted under this hearsay exception depends on whether the report was compiled or prepared in a way that indicates that its conclusions can be relied upon. *See id.* (citing *Moss*, 933 F.2d at 1305 (listing factors to consider to determine trustworthiness), 1307). "Certain information in a police report, however, such as witness statements offered to prove the truth of the matter asserted, are 'hearsay within hearsay' and are inadmissible unless each level of hearsay qualifies under one of the hearsay exceptions." *Id.* (citations omitted). The portions of the reports that reflect the officers' first-hand observations based on their investigations and experience are admissible. *See id.* (citations omitted). But the portions of the reports containing the officers' mere opinions are not admissible. *See id.* And the witness statements in the reports may be admissible under Rule 801(d)(2) as statements made by a party or individual in a representative capacity, but, to the extent the witness statements are offered to prove the truth of the matter asserted in the reports, they are inadmissible hearsay within hearsay. *See id.*

Plaintiff objects to the relevance of a March 2011 police report because it predates the sixty-consecutive-day time period before the loss or damage occurred. But evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *See* FED. R. EVID. 401. While the fact that the property may have been vacant

in March 2011 would not be relevant to a determination that the property was vacant within the sixty-day time period immediately preceding the loss or damage to Plaintiff's insured property, it may be relevant to Defendant's assertion that the property had been continuously vacant for a long time period preceding the discovery of the loss or damage, including the 60 days immediately preceding the loss or damage. This objection, too, should be overruled.

Defendant's investigator recorded a statement made by Patrick O'Leary, which is certified by a legal transcriptionist. Plaintiff objects to the statement on the basis of optional completeness and because an audio recording of the statement has not been provided to Plaintiff. The statement is admissible as a statement by a party or individual representative, *see* FED. R. EVID. 801(d)(2), and there is no evidence that Plaintiff requested an audio recording of the statement from Defendant. This objection, too, should be overruled.

Plaintiff objects to Tarrant County Appraisal District records that show the property as being vacant as hearsay. But the appraisal district records are admissible as public records under Federal Rule of Evidence 803(8). This objection should be overruled.

Plaintiff also objects because there is no evidence that the definition of "vacancy" used by the appraisal district is the same as that in the insurance policy. The appraisal district's determination that the property is vacant was made in furtherance of the district's legal duty to appraise the property, and it is not conclusory or irrelevant even though it may be based on a different definition of "vacancy" than that used in the

policy. This objection, too, should be overruled.

## Analysis

The determination of both motions for summary judgment turns on the interpretation and application of the insurance policy limitation excluding coverage when the property has been vacant for sixty consecutive days before the loss or damage occurs and the policy's definition of "vacancy." Neither party contends that the policy language is ambiguous. Instead, each argues that it is entitled to summary judgment as a matter of law.

Whether a contract is ambiguous is a legal question. *See Trammel Crow Residential Co. v. Am. Protection Ins. Co.*, No. 13-10451, 2014 WL 3041129, at *3 (5th Cir. July 7, 2014). "A contract is ambiguous 'if its plain language is amenable to more than one reasonable interpretation.'" *Id.* (quoting *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009)). If a contract is not ambiguous, then this Court "appl[ies] its plain meaning and enforce[s] it as written." *Id.* But, if a contract is ambiguous, the Court may "consider extrinsic evidence for 'the purpose of ascertaining the true intentions of the parties expressed in the contract.'" *Id.* (quoting *Friendswood Dev. Co. v. McDade + Co.*. 926 S.W.2d 280, 283 (Tex. 1996)).

When interpreting a policy, "courts are to ensure the policy is interpreted in such a way as to give effect to each term in the contract so that none will be rendered meaningless." *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 339 (5th Cir. 2002)). Moreover, "all provisions of the policy should be

considered with reference to the whole contract so that no provision is controlling." *Id.*

"[T]he maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured." *Id.* (quoting *Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, OA*, 143 F.3d 239, 242 (5th Cir. 1998)). When interpreting an ambiguous provision, "the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

I.     Plaintiff's Motion for Partial Summary Judgment should be denied.

Plaintiff argues that Defendant cannot meet its burden to prove that the vacancy exclusion applies because Defendant cannot demonstrate the exact date on which the loss or damage occurred and, as a result, it cannot establish that the insured premises were vacant 60 consecutive days before that date.

Plaintiff relies on the case of *Central Mutual Insurance Company v. KPE Firstplace Land, LLC,* 271 S.W.3d 454 (Tex. App. – Tyler 2008, no pet.), in which a Texas appellate court affirmed summary judgment in favor of the policyholder and held that the exclusionary vacancy provision did not bar coverage when the date the insured loss occurred was unknown. *See* 271 S.W.3d at 460-61. That case was submitted on joint stipulations of fact and was based on an insurance policy with a "vacancy" exclusion and definition very similar to those in this case. The insured submitted a

claim after it discovered an air conditioning unit was damaged by the theft of copper coils, and the insurer denied the claim based on the exclusionary vacancy provision. The parties disagreed about the meaning of the term "occurs" as it was used in the policy's vacancy provision. The insured argued that the loss "occurred" on the date the air conditioner became damaged, and the insurer argued that the loss "occurred" when the loss manifested itself or was discovered. Applying contract construction principles and giving the word "occur" its ordinary meaning, the court concluded that damage "occurs" when the property becomes damaged and that that date was unknown to both parties. Therefore, based on the stipulated facts and the facts necessarily implied from the stipulated facts, the court held that the insurer failed to meet its burden of proof as to the exclusionary vacancy provision because there was no evidence that the property was vacant for sixty consecutive days before the loss occurred.

Plaintiff here likewise argues that the vacancy provision does not bar coverage because Defendant cannot establish the date the loss or damage occurred. The parties do not dispute the meaning of the term "occurs," and it is undisputed that the exact date that the loss and damages occurred is unknown. Plaintiff alleges that the loss or damage occurred "approximately September 7, 2011." Dkt. No. 1-4 at 5. Thus, to prevail on its affirmative defense that policy provisions limit or preclude coverage, *see* Dkt. No. 17 at 5, Defendant must show that the property was vacant, as that term is defined in the policy, from approximately July 8, 2011 through September 7, 2011.

Viewing the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to Defendant, Plaintiff relies on the fact that the

property was leased to establish that it was not vacant. But Plaintiff is not entitled to summary judgment on the ground that Defendant cannot establish the date that the loss or damage occurred because, even though the exact date of the loss or damage is unknown, Defendant has come forward with competent summary judgment evidence to demonstrate that the property was vacant during any relevant sixty-day period.

Plaintiff's representative, O'Leary, stated that no business had operated out of the insured property since 2008, that he used the property for storage, and that there was no water or electric service at the property since 2008. Police officers investigating the theft observed that the property had not been occupied for a long period of time and did not appear to be occupied at the time of the loss or damage. And the lessee was in the transition process of preparing to open a business at the insured property but had not done so, and there is evidence to suggest that the presence of either O'Leary on behalf of Plaintiff or representatives of the lessee at the property in the sixty days prior to the theft was intermittent, at best.

Because Plaintiff has not established that it is entitled to summary judgment as a matter of law on its sole ground that Defendant cannot establish the exact date of the loss, Plaintiff's partial motion for summary judgment should be denied.

II.    <u>Defendant's Motion for Summary Judgment should be granted.</u>

A.    Defendant is entitled to summary judgment on its affirmative defense.

Defendant argues that it is entitled to summary judgment because it is undisputed that the insured property was vacant for at least sixty days prior to the date of the alleged vandalism or theft. Defendant not only asserts that the property

had been vacant for a long time before the sixty-day period could have begun and throughout any relevant sixty-day period but also focuses on the second prong of the "vacancy" definition to argue that neither Plaintiff nor its lessee was engaged in customary operations.

The policy does not define "customary operations," but neither party contends that the term is ambiguous and the undersigned agrees. "Customary" is defined as "commonly practiced, used, or observed." *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 318 (1991). Defendant interprets the policy narrowly to argue that the policy only covered a business engaged in the customary operation of a data and security business because the policy was issued to Plaintiff and included a Technology Office Pac. However, the policy also included the customary operations of a lessee, which would encompass those of Fletcher and his non-profit ministry. Given the policy's definition of "operations," "customary operations" in this context would be the commonly practiced business activities of either a data and security business or a non-profit ministry.

Defendant directs the court to three cases construing insurance policies with identical vacancy provisions in which summary judgment was granted or affirmed on the basis that the property was vacant because the insured property was not being used for customary operations sixty days prior to the loss or damage.

In *Saiz v. Charter Oak Fire Ins. Co.*, the district court granted summary judgment and found the property was vacant because the insured was not conducting the customary operations of a restaurant by using the basement for an office to conduct

-17-

other business after the restaurant closed. *See* 299 F. App'x 836, 840 (10th Cir. 2008). The insured continued to pay utilities, phone, and cable service and repainted and refurbished the property in anticipation of selling the restaurant. However, the Court determined that the property was vacant because it was not being used for the customary operation of a restaurant as required by the policy. *See id.* at 838, 840.

In *Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP v. Philadelphia Indem. Ins. Co.*, the district court granted summary judgment and found the property was vacant because it was not being operated as a school sixty days prior to the loss or damage. It had no permanent student body or faculty, had no electricity or gas, was used on only isolated occasions during temperate weather by students and teachers, and was primarily used for storage. Plans to use the property in the near future and to make repairs to the property were held to be irrelevant. *See* 462 F. App'x 70, 73-74 (2nd Cir 2012).

In *Sorema N. Am. Reinsurance Co. v. Johnson*, the Georgia appellate court affirmed summary judgment and a finding that the property was vacant when a building formerly used as a meat packing plant was being used to store meat packaging equipment. *See* 574 S.E.2d 377, 379 (Ga. App. 2002).

The mere fact that the insured buildings in this case were leased is not enough to show that they were not vacant. *See Oakdale Mall Assoc. v. Cincinnati Ins. Co.*, 702 F.3d 1119, 1125 (8th Cir. 2013). To interpret the contract to require only a lease to overcome the vacancy exclusion would be to render the second prong of the "vacancy"

definition – that either the building owner or its lessee was using the property to conduct customary operations – without effect. *See id.*

Viewing the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to Plaintiff, neither Plaintiff nor its lessee were conducting customary operations of either's business at the property within 60 days of the loss or damage. Plaintiff was transitioning its business out of the property and had a presence at the property to the extent that O'Leary used the property for storage, picked up deliveries and mail there, and tried to go to the property twice a week. Fletcher, the lessee, also was in the process of "ramping up" his non-profit ministry to operate out of the property. He and volunteers were at the property numerous times, and he was in the process of moving equipment to the property for use by his business. However, mere access to or incidental use does not constitute "customary operations." *See Keren*, 462 F. App'x 70, 73-74. And it is undisputed that there was no electricity or water service, which would make it seemingly impossible to conduct business activities at the property. Thus, at best, the summary judgment evidence shows that the lessee was preparing to operate its business at the insured property, which is not enough to overcome the vacancy exclusion. *See id.*

Giving the words "customary operations" their ordinary meaning, the undersigned finds that the policy was unambiguous and that the summary judgment evidence establishes beyond peradventure that neither Plaintiff nor its lessee was using the insured property to conduct customary operations within sixty days preceding the date of the loss.

Accordingly, Defendant is entitled to summary judgment on its affirmative defense that Plaintiff's claims were excluded or limited by the terms of the insurance policy.

**B.      Defendant is entitled to summary judgment on extracontractual claims.**

In its response to Defendant's motion for summary judgment, Plaintiff "requests dismissal" of its claims for negligence and exemplary damages [Dkt. No. 1-4] because it intended to assert those claims against Texas Insurance Group, which is not a party in this case, and they were erroneously asserted against Defendant. *See* Dkt. No. 45 at 14. The undersigned recommends that those claims be dismissed with prejudice. *See* FED. R. CIV. P. 41.

Defendant also argues that Plaintiff's extra-contractual claims for breach of the duty of good faith and fair dealing and violations of the Texas Insurance Code are precluded.

"'Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims.'" *Curtis v. State Farm Lloyds*, No. Civ.A. H-03-1025, 2004 WL 1621700, at *11 (S.D. Tex. April 29, 2004) (quoting *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997), which cites *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable

basis for denial. *Id.* (citing *Arnold*, 725 S.W.2d at 167). The key inquiry in a bad faith claim is the reasonableness of the insurer's conduct. *See id.* (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 49 (Tex. 1997)). "'A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim.'" *Id.* (quoting *Higginbotham*, 103 F.3d at 459). "'As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith.'" *Id.*

A violation of the duty of good faith and fair dealing is also treated as an unfair insurance practice. *See* TEX. INS. CODE §§ 451.051 - .061 (Vernon 2005). Plaintiff's claims that Defendant's alleged breach of the duty of good faith and fair dealing also violated the Texas Insurance Code require the same predicate for recovery as bad faith causes of action in Texas. *See Higginbotham*, 103 F.3d at 460.

Plaintiff's extracontractual claims are based on the contention that Defendant failed to properly investigate whether the property was vacant during the relevant time period. Viewing the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to Plaintiff, Defendant knew that the property was leased to Fletcher but did not interview Fletcher concerning his use of the property, take a recorded statement from Fletcher, or examine him under oath. *See* Dkt. No. 45 at 13. Defendant's investigator's notes state that Fletcher called, stated he was in a hurry, and requested that the investigator call him later for additional information. Dkt. No. 41-10 at 1. The investigator did not do so, even though he

interviewed Plaintiff's representative, O'Leary, several times and obtained police reports and tax appraisal records.

Nevertheless, even without interviewing Fletcher, the summary judgment evidence shows that Defendant had a reasonable basis to deny Plaintiff's claim based on the vacancy exclusion – which the undersigned concludes precludes Plaintiff's recovery on its claims under the policy.

The undersigned finds that there is no genuine dispute of material fact ast to whether Defendant acted in bad faith or breached its duty of good faith and fair dealing. Therefore, Defendant is entitled to summary judgment on Plaintiff's extra-contractual claims.

## Recommendation

Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 33] should be denied.

Defendant's Motion for Summary Judgment [Dkt. No. 36] should be granted, and the case should be dismissed with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: July 31, 2014

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE